**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **EDWIN ALFONZO-CRUZ** | |
| PLAINTIFF | CIVIL NO. 15-2452 |
| VS. | |
| **V. SUAREZ & CO., INC;** | DISCRIMINATION BASED ON AGE, |
| **VICENTE SUAREZ;** | WRONGFUL TERMINATION (SEVERANCE PAY), |
| **JAMILE RACHID;** | AND TORT DAMAGES |
| **BEATRIZ FERNANDEZ;** | |
| **INSURANCE COMPANY XYZ;** | TRIAL BY JURY DEMANDED |
| **COMPANY ABC;** | |
| **JOHN & JANE DOE.** | |
| DEFENDANTS | |

**COMPLAINT**

**TO THE HONORABLE COURT:**

   **COMES NOW, Edwin Alfonzo-Cruz,** (hereinafter referred as "Plaintiff"), through the undersigned attorneys and very respectfully states, alleges and prays as follows:

**PRELIMINARY STATEMENT**

   1.    Plaintiff, who is 51 years old, worked for V. Suarez & Co., Inc. (hereinafter referred to as "VS") since January 16, 1987, until his discriminatory termination on October 24, 2014. Plaintiff has dedicated most of his life to the wine industry and has gone far and beyond in expanding VS's market in Puerto Rico and other nearby market locations. Plaintiff had ample authority to execute agreements, which were dully authorized by VS and its high officials, for the benefit of VS and its continuing growth as the lead distributor of wine products in Puerto Rico. However, VS, under the false pretextual argument

fabricated by Miss Beatriz Fernández, surprised the Plaintiff with a meeting on October 24, 2014, where they falsely allege that Plaintiff personally benefited from some agreements and, without giving the Plaintiff any ample opportunity to defend himself, summarily terminated the Plaintiff from his position in which he had diligently complied for the past twenty seven (27) years.

2.      Such actions constitute a disparate treatment by the Defendants, based on age discrimination, due to the fact that VS later replaced the Plaintiff with a younger employee named Arnaldi Carrasquillo, thus causing damages to the Plaintiff.

3.      Plaintiff files this civil action against VS, Vicente Suarez, Beatriz Fernández, and Jamile Rachid (hereinafter referred collectively as the "Defendants") based on the following: discrimination based on Age pursuant to the Age Discrimination in Employment Act, 29 USC sec. 621 *et seq*., Puerto Rico's Law No. 100 of June 30, 1959, 29 LPRA sec. 146 *et seq*.; and Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico; Wrongful Termination (Unjust Dismissal) pursuant to Puerto Rico's Law No. 80 of May 30, 1976, 29 LPRA sec. 185a *et seq*.; and Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

4.      Plaintiff seeks compensatory, punitive, double and liquidated damages, severance pay, back pay, front pay, and equitable and injunctive relief for Defendant's unlawful and discriminatory employment termination of the Plaintiff on the basis of his age. In addition, Plaintiff seeks other specific remedies that restore him to the position that he would have held in the absence of discrimination.

**JURISDICTION AND VENUE**

5.      The United States District Court for the District of Puerto Rico has jurisdiction over this action under 28 U.S.C. sec. 1331 since the matter of this civil action arises under the Constitution, laws, or treaties of the United States. Specifically, Plaintiff files this action pursuant to the Age Discrimination in Employment Act.

6.      Plaintiff further invokes pendent or supplemental jurisdiction of this Court under 28 USC sec. 1367 to hear Puerto Rico constitutional and law claims arising from the same nucleus of operative facts. Specifically, Plaintiff files this action pursuant to Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico, P.R. Law 100 of June, 30, 1959, 29 LPRA sec. 146 et seq.; P.R. Law 80 of May 30, 1976, 29 LPRA sec. 185 *et seq*, and Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

7.      Pursuant to 28 U.S.C. sec. 1391 (a), venue is proper in the District of Puerto Rico because the events that justify the causes of action occurred in this district and the defendant resides within this judicial district.

8.      Before filing this instant case, Plaintiff filed timely charges of discrimination on the basis of age before the Equal Employment Opportunity Commission (hereinafter referred to as "EEOC") within one hundred and eighty (180) days and/or three hundred (300) days after the adverse employment action. Notice of Right to Sue from the EEOC was received by the Plaintiff. Plaintiff thus filed this timely Complaint within ninety (90) days of receipt of the EEOC's Notification of Right to Sue.

9.      Plaintiff demands that all causes of action be tried before a jury.

## PARTIES

10.     Plaintiff, Edwin Alfonzo-Cruz, is of legal age, citizen of the United States, domiciled and resident of San Juan, Puerto Rico. Plaintiff is over forty (40) years of age. At the time of Plaintiff's termination of his employment with Defendants, he was 50 years of age.  Plaintiff's physical address is 100 La Sierra del Sol, San Juan, PR 00926.

11.     Defendant, V. Suarez & Co., Inc. (hereinafter referred as "VS") is a For Profit Corporation organized and duly authorized to do business under the laws of the Commonwealth of Puerto Rico. The company is formed for the purpose of distribution of food and beverages. The company has a designated office in the Commonwealth of Puerto Rico located in Carr. PR-5 Intersección PR-22, Marginal Sur, Juan Sánchez, Bayamón, PR 00959. In addition, VS also has a postal address which is P.O. BOX 364588 San Juan, PR 00936-4588.

12.     Co-Defendant Vicente Suárez (hereinafter referred as "VP"), is the Vice-President of Sales and Promotions at VS. His current personal address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered. However his current business address is Carr. PR-5 Intersección PR-22, Marginal Sur, Juan Sánchez, Bayamón, PR 00959.

13.     Co-Defendant Beatriz Fernández (hereinafter referred to as "Auditor") is the Internal Auditor at VS. Her current personal address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered. However her current business address is Carr. PR-5 Intersección PR-22, Marginal Sur, Juan Sánchez, Bayamón, PR 00959.

14.     Co-Defendant Jamile Rachid (hereinafter referred to as "HR Director") is the Director of the Human Resources Department at VS. Her current personal address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered. However her current business address is Carr. PR-5 Intersección PR-22, Marginal Sur, Juan Sánchez, Bayamón, PR 00959.

15.     Co-Defendant, Insurance Company XYZ (hereinafter referred to as "Insurance Company XYZ"), held an insurance policy in favor of the Defendants. At the time of the discriminatory incidents described herein, Insurance Company XYZ held an insurance policy in favor of the Defendants, specifically to cover said discriminatory claims. Their Current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

16.     Co-Defendant, Company ABC (hereinafter referred to as "Company ABC"), is another business company, which is the parent company or an affiliated company of the Defendants, that directed and had knowledge of Defendants' discriminatory acts of which Plaintiff is complaining. Their Current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

17.     Co-Defendant, John & Jane Doe (hereinafter referred to as "Doe"), is another agent, supervisor, official or director who is affiliated with the Defendants, who directed and had knowledge of Defendants' discriminatory acts of which Plaintiff is complaining. Their Current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

**THE FACTS**

18.     Plaintiff worked for VS since January 16, 1987, until he was unlawfully dismissed on October 24, 2014.

19.     VS is a for-profit company dedicated for the purpose of distributing food, beverages and household goods. VS has been in the market for more than sixty five (65) years establishing itself as Puerto Rico's leading distributor of the before mentioned products.

20.     Plaintiff started working with VS on January 16, 1987, when he was approximately twenty two (22) years old.

21.     During his initial employment, VS mostly assigned the Plaintiff to work in the Sales Department.

22.     In 1995, Plaintiff was given the position as Wine Director of VS. Plaintiff worked in the position of Wine Director for approximately nineteen (19) years.

23.     Plaintiff's duties as a Wine Director for VS were the following: administrator of the Wine Department, administrator of the sales and marketing of the Wine Department, supervising sales groups, maintaining public relations with the suppliers and direct clients of VS, personally executing business agreements with suppliers and direct clients of VS, and supervising two VS wine stores located in San Juan and Ponce.

24.     Throughout the Plaintiff's twenty seven (27) years of dedication to VS, he always complied fully with his tasks and such is reflected in Plaintiff's evaluations.

25.     During the last five (5) years of his employment with VS, the Plaintiff started engaging in preferred vendor agreements with various clients as a negotiation strategy and as part of Plaintiff's inherent authority as Wine Director of VS. Specifically, these preferred

vendor agreements with the clients contained their promise to buy sufficient VS products which would at least consist in 75% of their wine inventory. On the other hand, within the preferred vendor agreement, VS promised to pay a certain amount of money to the clients in exchange that they honor their promise to purchase sufficient VS products which would at least consist in 75% of their wine inventory.

26.    The before mentioned negotiation strategy was approved by the owners and managers at VS, who, for more than five (5) years, signed the checks for the purposes of said agreements. All these certified checks underwent a thorough process of verification in different stages within VS's corporation. Specifically, the Plaintiff had to request the disbursement of any amount of money to Mr. Joaquin Dávila, President of the Beverages Division, Mari Casellas, Vice-President of Marketing, and the Accounting Department of VS.

27.    While the sales of the other divisions within VS were suffering losses, the Wine Department, under the leadership of the Plaintiff, was profiting. A monthly report of VS's sales was prepared by the Marketing Department which reflected a success in the Wine Department under the direction of the Plaintiff.

28.    VS benefited out of these preferred vendor agreements and generated over a million dollars ($1,000,000.00) in annual sales.

29.    Another negotiation strategy also practiced by VS and other competing food and beverages distributors is the use of promotional campaigns and public relations with their clients for the benefit of the company. For example, VS, as well as other competing distributors, have participated in such promotional and public relations campaigns by paying the activities of their client, offering merchandise as gifts to their clients for their activities, and inviting their clients to their own company celebrations.

30.     As part of Plaintiff's inherent authority as Wine Director of VS, the Plaintiff authorized the offering of free VS merchandise to clients in order for them to use in their own activities, which was an integral part of these promotional and public relations campaigns. All merchandise that the Plaintiff authorized to be delivered to said clients was sometimes discounted from the sum amount of money that VS reserved and/or paid as a part of the preferred vendor agreements that was agreed upon by VS and their clients.

31.     In other words, if VS paid a client a certain amount a year so that the client would purchase the majority of its products from VS, the free merchandise that the Plaintiff authorized for promotional and public relations campaigns would be deducted from VS's money payment that was the base of the preferred vendor agreements.

32.     Approximately, around March of 2014, Plaintiff was subject to an invasive surgery where the left hip was replaced due to a medical condition named Necrosis Avascular which the Plaintiff suffered from. After said operation, the Plaintiff was in medical leave for eight weeks recovering and receiving physical therapy.

33.     When the Plaintiff returned to his employment, his work performance was not adversely affected by said operation, even though the Plaintiff was suffering the same condition in his right hip.

34.     The Plaintiff had a second operation coordinated for July, 2014, to replace his right hip, when the VP of VS told the Plaintiff that he was old and "fucked" ("viejo y jodido"). The Plaintiff felt offended by this comment, notwithstanding, the Plaintiff ignored the VP and continued with his labor.

35.     Approximately on September, 2014, an internal audit commenced within the company. This internal audit was the first of its kind, in which VS charged the Auditor to investigate clients who allegedly were ninety (90) days behind in payments.

36.     During this internal audit, the Auditor allegedly discovered the existence of promotional tickets requested by the Plaintiff. Specifically, the Auditor discovered the promotional merchandise tickets that were utilized under the Plaintiff's authority for the purpose of the multiannual negotiation strategy with regards to the preferred vendor agreements exchange.

37.     After the audit, Plaintiff was called to an unscheduled meeting on October 24th, 2014, with the HR Director, the Auditor, and the VP. At said meeting, the Auditor and the VP asked the Plaintiff about the promotional tickets. The Plaintiff explained that the purpose behind the exchange of promotional tickets was for the benefit of VS, as part of its promotional campaign and public relations. In fact, the Plaintiff explained that VS's sales increased significantly because of the preferred vendor agreements and the promotional and public relations campaigns.

38.     At said meeting, the Auditor falsely alleged, for the first time after more than five (5) years in which VS authorized the Plaintiff, that supposedly VS had no knowledge of the offerings of free VS merchandise to clients in order for them to use in their own activities, which was an integral part of these promotional and public relations campaigns.

39.     The Auditor also falsely alleged that said practice was a violation of the rules and procedures of VS.

40.     The Auditor falsely alleged that VS suffered from $23,000.00 in lost revenue because of Plaintiff's practice. The Plaintiff denied this and mentioned that VS's Wine department had positive sales.

41.     This took the Plaintiff by surprise because VS never established any written rules or procedures with regards to the use of the promotional merchandise. Additionally, the Plaintiff was never informed by any of his superiors at VS that this practice was supposedly prohibited. Plaintiff honesty believed that he had plain inherent authority to conduct this practice.

42.     During said meeting, none of the other parties showed the Plaintiff any types of written rules or procedures that expressly prohibited the business activity that the Plaintiff participated in. Specifically, the Plaintiff was not shown any company policy that established that a violation of this alleged rule or procedure could lead to an immediate termination.

43.     The only documents that the Plaintiff was shown were the invoices of the promotional tickets that were requested by the Plaintiff. The Plaintiff was asked whether he recognize these invoices, to which the Plaintiff said he did. The Plaintiff said that these were the same promotional tickets that other employees were able to request with accordance to their roles in sales and public relations. The Plaintiff alleged that other employees that are in similar and/or higher management positions were able to request these same promotional tickets of VS.

44.     Notwithstanding, the VP told the Plaintiff that he supposedly could not request these promotional tickets and that said practice is against company policy. Again, the Plaintiff did not agree with the VP's statement.

45.     The VP offered the Plaintiff the alternative option of submitting his resignation voluntarily in exchange that VS would supposedly not file a criminal charge against the Plaintiff. Additionally, the Defendants explained to the Plaintiff that if he would voluntarily resign his position in VS, they would gladly provide a good recommendation to any future employer of the Plaintiff.

46.     The Plaintiff immediately rejected all of the offerings knowing that he did not commit any type of violation with regards to his business practice. The Plaintiff honestly believed that he had the inherent authority as an agent of VS to partake in preferred vendor agreements, which were known by the managers during the last five (5) years, and to offer free VS merchandise to clients with the specific purpose of promotional and public relations campaigns.

47.     In addition, the Plaintiff does not understand why VS would order him to present a letter of resignation, when the Defendants alleged that the Plaintiff committed a crime in violation of VS's rules and procedures. Also, the Plaintiff does not understand how the Defendants would provide a good recommendation in support of the Plaintiff if he allegedly committed a serious violation of company and public policy.

48.     Plaintiff was unlawfully being forced to sign a voluntary resignation letter, which would have constituted a constructive dismissal. However, Plaintiff did not agree with the Defendant's suggestion, because the Plaintiff truthfully did not want to resign from his job. Because of this, his termination on October 24, 2014, was an unlawful termination.

49.     At the end of said meeting, the Defendants told the Plaintiff that he was fired and ordered him to leave the premises immediately. The Defendants, who convened this unscheduled meeting on October 24th, 2014, already had their mind set in firing the

Plaintiff and, in reality, did not give the Plaintiff an appropriate forum or opportunity to defend himself from these false allegations.

50.     Over the course of Plaintiff's twenty seven (27) years of employment, the Plaintiff was only reprimanded approximately two times for actions not related to the before mentioned false accusations. The Plaintiff was never suspended from his employment.

51.     Plaintiff always fulfilled and excelled at his duties, and such was reflected in all of Plaintiff's evaluations.

52.     After the Plaintiff's unlawful dismissal, VS gave the Wine Director position to a substantially younger substandard employee named Arnaldi Carrasquillo.

53.     Based on the Auditor's false accusations against the Plaintiff, the Auditor was inappropriately promoted by VS to become the Head Director of the Internal Audit Department, thus constituting a discriminatory action against the Plaintiff because she was fabricated the false pretextual grounds for the Plaintiff's unlawful termination. The Auditor did not provide the Plaintiff any opportunity whatsoever to meet and discuss the Auditor's findings in greater detail so as to demonstrate to VS the Plaintiff's positive work performance.

54.     The VP, the Auditor, and the HR Director are agents who are duly authorized by VS, who committed a discriminatory act in the course and scope of their agency relationship, thus imposing liability to VS.

55.     VS had knowledge of the VP, the Auditor, and the HR Director's arbitrary and discriminatory decisions. VS did not take any proper action to rectify and/or avoid the discriminatory actions incurred by the VP, the Auditor, and the HR Director. VS allowed the

VP, the Auditor, and the HR Director to discriminate against the Plaintiff by firing the Plaintiff because of his age and replacing him with a substantially younger substandard employee, based on false pretextual grounds.

56.     Company ABC was the parent company or an affiliated company of VS. Company ABC had knowledge of the VP, the Auditor and the HR Director's arbitrary and discriminatory decisions. Company ABC did not take any proper action to rectify and/or avoid the discriminatory actions incurred by the VP, the Auditor and the HR Director. Company ABC allowed the VP, the Auditor and the HR Director to discriminate against the Plaintiff, by firing the Plaintiff because of his age and replacing him with a substantially younger substandard employee, based on false pretextual grounds.

57.     John & Jane Doe had knowledge of the VP, the Auditor and the HR Director's arbitrary and discriminatory decisions. John & Jane Doe did not take any proper action to rectify and/or avoid the discriminatory actions incurred by the VP, the Auditor and the HR Director. John & Jane Doe allowed the VP, the Auditor and the HR Director to discriminate against the Plaintiff, by firing the Plaintiff because of his age and replacing him with a substantially younger substandard employee, based on false pretextual grounds.

58.     At the time of these discriminatory incidents, Insurance Company XYZ held an insurance policy in favor of VS, specifically to cover said discriminatory claims. Said insurance policy was in force at the time of the discriminatory incidents.

59.     Ever since Plaintiff was dismissed, Plaintiff has suffered economic losses and deprivation of his salary. Plaintiff has lost sleep and rest, felt humiliated and discriminated, and has been at loss of his peace of mind and emotional stability.

60.     As up to this date, Plaintiff has not been able to obtain a job in spite of his endeavor to seek employment.

61.     The Defendants committed a discriminatory action against the Plaintiff, unlawfully terminating the Plaintiff without any just cause and replacing him with a substantially younger and substandard employee without any regards to his performance, qualifications or experience with the company.

62.     The Defendants are liable for all the Plaintiff's damages.

## FIRST CAUSE OF ACTION

## DISCRIMINATION BASED ON AGE

63.     Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

64.     Defendants' discriminatory conduct altered Plaintiff's employment condition because of Plaintiff's age.

65.     At the moment that the Defendants' incurred in the discriminatory conduct, the Plaintiff was performing his job well enough to meet the Defendants' legitimate expectations.

66.     Defendants' conduct against the Plaintiff constitutes discrimination on the basis of age in violation of ADEA, 29 USC sec. 621 et seq., Puerto Rico's Law No. 100 of June 30, 1959, 29 LPRA sec. 146 *et seq.* and Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico.

67.     As a proximate result of Defendants' discriminatory practice, Plaintiff has suffered intensely, has been deprived of his means of livelihood, has suffered economic losses and has been emotionally injured.

68.     As a result of Defendants' discriminatory practices, Plaintiff lost the salary he was entitled to.

69.     Defendants' are liable to Plaintiff for the back pay he was entitled had he maintained his position pursuant to ADEA, 29 USCA sec. 626 (b).

70.     Plaintiffs' last annual salary was approximately $135,600.00.

71.     Defendants' are liable to the Plaintiff under this cause of action for all lost wages and fringe benefits that the Plaintiff has incurred from the date of the adverse employment action to the date on which damages are settled. Such back pay should include lost wages, pension benefits, insurance, vacation, profit sharing, accrued sick leave and other economic benefits of employment, plus prejudgment interest.

72.     Pursuant to ADEA, Defendants' discriminatory practices against the Plaintiff were willful, malicious and/or carried with reckless indifference towards Plaintiffs' rights protected under federal law. Plaintiff is thus entitled to double and liquidated damages. This amount continues to increase with the passage of time and will be adjusted accordingly at the time of the trial.

73.     In the alternative, an adequate remedy under PR Law No. 100, Defendants' are liable to Plaintiff for double the amount of back pay, front pay and compensatory damages, without the need of establishing that there was a willful, malicious and/or reckless indifference towards Plaintiffs' rights.

74.     Plaintiff's dismissal was the culmination of Defendants' discriminatory practice against the Plaintiff because of his age.

75.     Defendants' are liable to Plaintiff under this cause of action, pursuant to ADEA, PR Law 100 and the Constitution of the Commonwealth of Puerto Rico, in excess of five million dollars ($5,000,000.00).

76.     In addition, Plaintiff is entitled to reinstatement and to an order forbidding any further discriminatory practices against him.

77.     In addition to the remedies before mentioned, Plaintiff is entitled to double compensatory and statutory damages. As a result thereof, Defendants' are liable for double compensatory and statutory damages. These damages are estimated at no less than five million dollars ($5,000,000.00), which times two equal ten million dollars ($10,000,000.00).

## SECOND CAUSE OF ACTION

## WRONGFUL TERMINATION / UNJUST DISMISSAL

78.     Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

79.     Defendants' actions constitute a termination of employment without just cause.

80.     Defendants' are liable to Plaintiff pursuant to P.R. Law No. 80, 29 LPRA sec. 185a *et seq*, for an amount equal to six (6) months of salary plus benefits, as defined in the law, and eighty one (81) additional weeks of compensation, based on their highest earning in any thirty day period within the three years prior to the employee's dismissal. This amount to a severance pay of approximately two hundred ninety six thousand nine hundred and forty two dollars with eighty nine cents ($296,942.89).

## THIRD CAUSE OF ACTION

## TORTS DAMAGES

81.     Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

82.     Defendants' actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

83.     Defendants are liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

84.     VP's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

85.     VP is liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

86.     Auditor's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

87.     Auditor is liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

88.     HR Director's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

89.     HR Director is liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

90.     John & Jane Doe's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

91.     John & Jane Doe's are liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

92.     Company ABC's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

93.     Company ABC is liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

94.     The VP, the Auditor and the HR Director's actions as officers and/or employees of the Defendant VS constitute an act or omission which caused damages to Plaintiff. Said act or omission was incurred due to fault or negligence.

95.     Therefore, Defendant VP are vicariously liable for damages caused by their officers and/or employees in their service pursuant to Article 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5142.

96.     VS's actions as affiliated company of Company ABC constitute an act or omission which caused damages to Plaintiff. Said act or omission was incurred due to fault or negligence.

97.     Therefore, Company ABC is vicariously liable for damages caused by the Defendants' in their service pursuant to Article 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5142.

98.     All before mentioned Defendants are jointly and severally liable for their negligent and intentional tort actions.

99.     As a result thereof, Defendants are liable for compensatory and statutory damages pursuant to Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 LPRA sec.

5141, 5142. These damages are estimated at no less than five hundred thousand dollars ($500,000.00).

## FOURTH CAUSE OF ACTION

### INSURANCE COMPANIES ARE JOINTLY AND SEVERALLY LIABLE

100.    Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

101.    Insurance Company XYZ is directly, jointly and severally liable, along with the other Co-defendants to the Plaintiff for the damages caused by their insured, pursuant to the terms and coverage of their respective policy of insurance.

## FIFTH CAUSE OF ACTION

### ATTORNEYS FEES AND PREJUDGMENT INTEREST

102.    Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

103.    Defendants' are liable to Plaintiff for attorney's fees and costs under ADEA, 29 USC sec. 216 (b), and Title VII, 42 U.S.C. sec. 2000e-5(k) and 42 USC sec. 1988.

104.    Defendants' are also liable to Plaintiff for attorney's fees under PR Law 100 and Law 80.

105.    Defendants' are liable for prejudgment interest pursuant to Rule 54 of the Federal Rules of Civil Procedure.

## DEMAND FOR JURY TRIAL

106.     Plaintiff demand a trial by jury as to all claims and issues alleged herein.

**PRAYER**

Wherefore, all allegations considered, Plaintiff prays that judgment be entered in their favor and against all Defendants', specifically:

1. Granting Plaintiff's Complaint against Defendants. The Court should grant Plaintiff's complaint and find that the Defendants are liable to the Plaintiff based on the following: Discrimination based on Age pursuant to the Age Discrimination in Employment Act, 29 USC sec. 621 *et seq*., Puerto Rico's Law No. 100 of June 30, 1959, 29 LPRA sec. 146 *et seq*., and Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico; Wrongful Termination (Unjust Dismissal) pursuant to Puerto Rico's Law No. 80 of May 30, 1976, 29 LPRA sec. 185a *et seq*.; and Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

2. An order directing Defendants' to reinstate Plaintiff to her former position and to cease and desist of any further discriminatory conduct on the basis of Age.

3. Awarding Plaintiff back pay, together with interest, for the period that Plaintiff was deprived of her salary, as it was awarded to other employees in her previous position.

4. Awarding Plaintiff punitive and liquidated damages equal to twice the back pay and fringe benefits lost by the Plaintiff.

5. Awarding Plaintiff lost benefits, both past and future.

6. Awarding Plaintiff the amounts before mentioned in the Complaint, including the double compensatory damages.

7. Awarding Plaintiff severance pay pursuant to PR Law No. 80.

8. Awarding Plaintiff reasonable attorney's fees, together with costs, litigation expenses, and necessary disbursements.

9. Awarding Plaintiff any and all other relief to which Plaintiff may be justly entitled.

**RESPECTFULLY SUBMITTED**: In San Juan, Puerto Rico, on this 6th day of October, 2015.

_**S/VICTOR M. RIVERA-RIOS**_
VICTOR M. RIVERA-RIOS
USDC BAR NUMBER 301202
RIVERA COLÓN, RIVERA TORRES & RIOS BERLY, PSC
1502 FERNANDEZ JUNCOS AVE
SAN JUAN, PR 00909
Telephone: (787) 727-5710
Facsimile: (787) 268-1835
E-Mail: victorriverarios@rcrtrblaw.com